IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JOYCE HUFF, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CV-97-AR-2756-M |
| | ) |
| GENERAL MOTORS CORPORATION, | ) |
| | ) |
|     Defendant. | ) |

ENTERED

JAN 27 1999

**MEMORANDUM OPINION**

Currently before this court is a motion for summary judgment by defendant, General Motors Corporation[1] ("GM"). Because the court finds that no genuine issue of material fact exists, GM's motion will be granted. The rationale of the court follows.

Pertinent Undisputed Facts

Plaintiff, Joyce Huff ("Huff"), was employed by GM at its Delphi-Packard plant in Gadsden, Alabama. During June of 1997, one of GM's employees at the plant was a victim of threatening phone calls and vandalism to her property. GM began an internal inquiry into the matter, and Susan Ponsler ("Ponsler"), a GM employee who worked as an investigator, was dispatched from

---

[1] Despite the persistently misleading labeling of this action, the court recognizes that Delphi-Packard is an unincorporated, wholly-owned division of General Motors Corporation. As a result, General Motors Corporation is the sole defendant. The court will ignore the non-entity erroneously called Delphi-Packard, Inc.

Indiana to conduct the investigation. Ponsler traveled to the Delphi-Packard plant in August of 1997, interviewed plant employees, reviewed tape recordings of the phone harassment, and contacted local law enforcement. Because Huff was absent from the plant due to illness, Ponsler visited her at her home to interview her there.

Ponsler clearly identified herself as a GM employee and explained to Huff that she was investigating the harassment of Huff's fellow employee. According to Huff, Ponsler falsely represented that compelling evidence existed to prove that Huff had committed the harassment. Huff also alleges that Ponsler badgered her for a confession and threatened arrest and imprisonment, allegedly emphasizing that federal and local law enforcement agencies were working in close cooperation with Ponsler in the investigation. Huff became upset and was generally uncooperative. After a heated exchange, Huff and her husband asked Ponsler to leave.

When Huff returned to work the following day, she again refused to answer Ponsler's questions regarding the harassment of Huff's co-worker. Huff's supervisors held a disciplinary meeting, claiming that Huff, at a minimum, had a duty to cooperate with the investigation. As a result of the meeting, Huff was briefly suspended without pay. Huff challenged the suspension through the grievance procedures available under her union's collective

bargaining agreement ("CBA"), but the suspension was upheld.

On September 30, 1997, Huff filed the present action, alleging fraudulent misrepresentation and/or suppression, and the tort of outrageous conduct leading to emotional distress. On the basis of diversity, GM removed the action to this court on October 17, 1997. After leave was granted, Huff amended her complaint on November 14, 1997 to allege criminal coercion under Ala. Code § 13A-6-25 and intimidation of a witness under Ala. Code § 13A-10-123.

Unlike most cases considered by this court for possible summary disposition, the parties essentially agree on the pertinent facts. GM submitted to the court an itemized statement of facts, and Huff submitted an itemized response, in which she points out some factual disputes, but none that are material. For instance, Huff states that she did not merely reply "No comment" to Ponsler's questions during their second encounter, but that she also "offered" her attorney's a business card. In similarly irrelevant fashion, Huff also disputes that Ponsler's initial questioning at Huff's home was "brief," but rather asserts that it was "fairly extensive". These disputes are minor, and even if genuine, certainly are not material; they have no impact of the court's determinations for summary judgment purposes.

<u>Preemption By Section 301</u>

of the Labor Management Relations Act:

Huff's claims of fraudulent suppression are clearly preempted by § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185 ("§ 301"), because a claim for suppression requires a showing of a duty to disclose. This aspect of Huff's action perhaps could have been disposed of under Rule 12(b)(6) consideration. This court would ultimately be required to examine GM's obligations to disclose under the CBA, and thus this claim is preempted by § 301. Even if not pre-empted, Huff has demonstrated no such duty to disclose under state common law; if GM had such a duty under the CBA, Huff will have to be satisfied with the process and remedies provided by it.

Likewise, a claim of intentional infliction of emotional distress, otherwise known in Alabama as the tort of outrage, would require Huff to show that GM had breached its duty to her under state law. Although difficult to imagine, the CBA may attempt to modify such duties; however, under Alabama law, collective bargaining agreements which purport to release a party from liability for intentional misconduct are void for public policy considerations. Under the rule in <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 105 S.Ct. 1904 (1985), "Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of § 301 beyond suits for breach of contract,

it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212, 105 S.Ct. at 1912.

Following <u>Allis-Chalmers</u>, this court finds that because the CBA could not possibly grant GM the ability to engage in intentional illegal misconduct, § 301 cannot possibly preempt claims for intentional infliction of emotional distress. This same reasoning applies to each of Huff's claims, including fraudulent misrepresentation, criminal coercion contrary to Ala. Code § 13A-6-25s, and intimidation of a witness contrary to Ala. Code §13A-10-123.

Thus, only Huff's claim of suppression is preempted by § 301. However, although this court is free to hold that a determination of the suppression claim would require construction of the CBA, this court may not engage in the actual construction unless Huff has exhausted her administrative remedies. Huff has failed to follow the grievance procedures established by the CBA, which provides an administrative procedure for resolving both contractual and non-contractual disputes. (*Affidavit of Kitchens*, at paragraph 7). GM correctly points out that although Huff used the grievance procedure to dispute her suspension, she did not avail herself of that procedure before presenting her current claims to this court. Because she failed to exhaust those

administrative remedies under the CBA regarding her claim of fraudulent suppression - the only one of her claims preempted by § 301 - that claim must fail in this court. Accordingly, Huff's suppression claim, upon which this court cannot enter final judgment, is due to be dismissed without prejudice. Huff may pursue this claim, if she so desires, under the terms of the CBA, to the extent the CBA provides an avenue of relief.

### Merits of the remaining claims

Having determined that most of Huff's claims are not preempted by § 301, the court must turn to each remaining claim on the merits. Because the parties' factual disagreements are immaterial and inconsequential, only issues of law remain. As discussed below, it is appropriate for the court to enter judgment as a matter of law on every count remaining.

### Fraudulent Misrepresentation

Huff alleges that Ponsler told her that GM possessed "voice prints," *i.e.* recordings of Huff's voice, which purportedly established that Huff had made threatening phone calls to a fellow employee. Huff also alleges that Ponsler told her that local law enforcement intended to arrest her and that she would serve several years in jail for making the threats. Even if factually true, Huff fails, as a matter of law, to make out a viable claim

for fraudulent misrepresentation.

Under Alabama law, in order to establish fraudulent misrepresentation, a plaintiff must demonstrate "(1) that the defendant made a false representation to the plaintiff, (2) that the false representation related to a material fact, (3) that the plaintiff justifiably relied on the false statement; and (4) that the plaintiff sustained damages as a proximate result." *Braswell v. Conagra, Inc.*, 936 F.2d 1169, 1174 (11th Cir. 1991); citing *Sharp Electronics Corp. v. Shaw*, 524 So.2d 586, 592 (Ala. 1987).

Construing all factual questions in Huff's favor, the court finds that Huff cannot satisfy the standard required to establish fraud. Assuming *arguendo* that Ponsler made the alleged false statements and that the false statements were in some regard material, it is not reasonable to conclude that Huff justifiably relied upon the fraud. As GM points out in its memorandum brief, "As a threshold matter, the alleged statement that Plaintiff would be going to jail for a long time, even if made, amounts to little more than an opinion." *Def.'s Brief*, at 11. Huff has acknowledged that Ponsler identified herself as an employee and investigator for GM, so Huff knew, or should have known, that Ponsler did not represent law enforcement and had no authority to arrest or jail her. Additionally, Ponsler's other alleged statements, to the effect that recordings of the harassing phone calls established Huff as the culprit, likewise cannot form the

basis of a fraud claim. If Huff was not actually the caller, she had knowledge that any such statements were false; if Huff was the caller, the truth of the alleged statements would likely act as an effective defense. Either way, any detrimental reliance upon such alleged statements would not have been reasonable.

Indeed, it is not clear that Huff did act in reliance upon the alleged false statements, whether to her detriment or not. She did not quit her job, did not falsely confess, and apparently sought legal counsel, not for defense purposes, but rather in aid of her prospective status as plaintiff in this case. Huff appears to argue that the "act" of becoming distraught is somehow simultaneously the reliance and the harm, but she has cited no legal authority for this proposition. Whether or not emotional disturbance constitutes sufficient reliance for purposes of establishing a fraud claim, such reliance, as already concluded, could not have been reasonable in this instance. As a result, Huff has failed to present sufficient evidence to sustain a triable claim of fraudulent misrepresentation, and GM is entitled to a ruling in its favor, granting judgment as a matter of law on this claim.

Tortious Outrageous Conduct

Under the standard set out by <u>Peterson v. BMI Refractories</u>, 132 F.3d 1405 (11th Cir. 1988), a claim for the tort of outrage

requires proof that a defendant's conduct (1) was intentional and reckless, (2) was extreme and outrageous, and (3) caused emotional distress so severe that no reasonable person could be expected to endure it. *Id.*, at 1413. This is a very heavy burden of proof, and the Alabama Supreme Court has assigned liability for outrageous conduct only where such conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is regarded as utterly intolerable in a civilized society." *American Road Service Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1980). Since *Inmon*, courts have found jury-triable questions on an outrage claim in only a few unusual contexts, none of which are present in the current case. *See, e.g., Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala. 1933).

Huff has presented absolutely no evidence which would meet the high threshold required to sustain an outrage claim. Huff claims that Ponsler lied to her, badgered her to confess, and threatened arrest and imprisonment, even though Huff was or should have been fully aware that Ponsler had no authority to carry out the threats. To support her contention that Ponsler's conduct was extreme, Huff offers the deposition testimony of doctors who theorize that her psychiatric state could only have been spawned by a terribly traumatic event. Starting from that premise, Huff arrives at the *non sequitur* conclusion that her confrontations with Ponsler must be described as terribly traumatic and

outrageous. For purposes of summary judgment, this court must accept the deposition testimony of Huff's experts as true. However, it simply does not follow logically, despite Huff's insistence to the contrary, that because Huff's mental condition could only arise from a traumatic event, Ponsler's conduct must *therefore* have been so extreme and outrageous that reasonable persons cannot be expected to endure it. If such an avenue of proving "outrage" exists, it exists in every case. In her brief opposing GM's motion, Huff herself cites the deposition testimony of Dr. David R. Wilson for the following point:

> Q: In other persons might an individual who was threatened with that type of conduct or that type of prediction react differently, perhaps with anger and/or bitterness but not with fear and/or post-traumatic stress?
> A: Correct. Some people would have fear, some people would have anger but it's, I mean it's entirely reasonable and not surprising that <u>an individual such as Joyce</u> would respond that way.

(*Depo. II of Wilson*, at 124) (*emphasis added*).

Ponsler's conduct may have been rude, heavy-handed, deceptive, and even boorish, but from the perspective of law enforcement or investigation, such conduct might just as easily be described as "cunning" or "probative". The court takes judicial notice of the fact that the FBI, the ATF, and the DEA use such techniques routinely. Dr. Wilson's testimony supports the conclusion that conduct like Ponsler's should only be expected to induce such trauma in individuals <u>like Huff</u>, whose reaction is surely not the norm. The court notes that Carol Hardin, Huff's

co-employee who was subjected to similar interrogation by Ponsler, in no way suffered similar "post-traumatic stress." In the final analysis, "mere insults, indignations, threats, annoyances, petty oppressions, or other trivialities" can never rise to the level necessary to deem conduct tortiously outrageous. *See Surrency v. Harbison*, 489 So.2d 1097, 1105-1106 (Ala. 1986). As a result, Huff's outrage claim fails as a matter of law, and GM's motion for summary judgment is due to be granted on this count.

### Criminal Coercion and Intimidation of a Witness

In her memorandum brief opposing summary judgment, Huff argues that "it is clear" that Ponsler's confrontations with Huff were intentional attempts at unlawful coercion or intimidation of a witness, but in the less than two pages which Huff devotes to both remaining counts, she wholly fails to cite any specific statements by Ponsler which constituted either offense. Instead, she paraphrases the "underlying implication" of Ponsler's statements, in their totality, as "Come clean or you will clearly be imprisoned... not just arrested... imprisoned." *Pl.'s Brief*, at 30. While this characterization may be accurate, there is no suggestion in the evidence that Ponsler intended to procure a *false* confession from Huff. If Huff was guilty of harassing her co-worker, Ponsler surely intended to find it out, even if by heavy-handed tactics, but nothing in the record suggests that

Ponsler threatened to arrest, restrain, imprison, physically harm, or sully the reputation of Huff if she was not actually the guilty party whom Ponsler sought.  Furthermore, as previously discussed, even if Ponsler's statements were threatening, they merely threatened action through official channels of law enforcement.  Because Huff knew that Ponsler was a GM employee and not a member of any law enforcement agency, she either knew or should have known that Ponsler herself had no authority to actually arrest, imprison, or otherwise harm her in a fashion which could sustain a charge of unlawful coercion or intimidation.

Ala. Code § 13A-6-25 provides that "A person commits the crime of criminal coercion if, without legal authority, he threatens to confine, restrain or to cause physical injury to the threatened person or another, or to damage the property or reputation of the threatened person or another with intent thereby to induce the threatened person or another against his will to do an unlawful act or refrain from a lawful act."  Paragraph 29 of Huff's "Amendment To Complaint" alleges only that Ponsler attempted to coerce her "with the intent to cause the plaintiff to engage in conduct against her will," but the complaint does not allege any intent to induce Huff to do any specific *unlawful* act or refrain from doing specific lawful acts.  The evidence falls short at all points on this count.

There is no evidence that Ponsler herself threatened to

confine, restrain or cause physical injury to Huff or another, and any predictions of arrest or imprisonment which Ponsler made were understood, or should have been understood, to be without force, without authority, mere predictions, and not made on behalf of any law enforcement agency with authority to enforce such threats. There is likewise no evidence that Ponsler herself threatened to damage Huff's property. Construing the evidence in Huff's favor, a reasonable jury could conclude that Ponsler made credible threats to damage Huff's reputation, threats which Ponsler had power to carry out. However, to sustain a coercion charge there must also be evidence that Ponsler intended to induce Huff to act unlawfully or refrain from acting lawfully. No such evidence exists. Huff quotes Ponsler's own characterization of events as an attempt to "get a confession from her [Huff]." *Depo. of Ponsler*, at 78, cited in *Pl.'s Brief*, at 30. However, nothing in the record suggests that Ponsler intended to induce Huff to lie or falsely confess. In short, even reasonable speculation as to Ponsler's motives does not suggest an intent to induce illegal conduct against Huff's will. Likewise, no reasonable jury could find evidence in the record to suggest that Ponsler intended to prevent Huff, against her will, from acting lawfully. Thus, even where a credible threat might reasonably be perceived, the requisite intent is not present, and therefore Huff's coercion claim must fail as a matter of law.

The court also notes that Huff relies upon Ala. Code § 6-5-370 for authority to bring a civil action for alleged violations of the criminal provisions § 13A-6-25 (criminal coercion) and § 13A-10-123 (intimidation of a witness). Section 6-5-370 in fact provides a cause of action for any injury <u>amounting to a felony</u>. It is true that 13A-10-123 classifies intimidation of a witness as a Class C felony; therefore this crime falls within the scope of § 6-5-370, and Huff may bring a civil suit to recover for alleged intimidation. However, both Huff and GM seem to have overlooked the fact that § 13A-6-25 classifies criminal coercion as a Class A Misdemeanor, not a felony. Thus, Huff would have no civil remedy for the alleged coercion, even if her claim had merit. Ordinarily this court would address such jurisdictional questions prior to discussing the merits. In this case, the court emphasizes the meritless nature of the coercion claim: The claim of criminal coercion is not properly brought before this court as part of these civil proceedings, but even if it were, the court finds that this claim, like Huff's other claims within the jurisdiction of the court, is unfounded and wholly unsupported by the evidence. GM is entitled to judgment as a matter of law on the questions of coercion and intimidation of a witness.

### Conclusion

For the reasons discussed above, the court finds that no genuine issues of material fact exist with regard to any of Huff's claims. Because this court would be required to construe the CBA to determine whether Ponsler had a duty to disclose any information relating to the investigation, Huff's suppression claim is pre-empted by § 301 of the Labor Management Relations Act. Because Huff is thereby bound to follow the grievance procedures under the CBA, and because she has not exhausted those procedures, this court cannot determine that question. The suppression claim is therefore due to be dismissed. As discussed, Huff fails to present evidence necessary to sustain any of her remaining claims, and GM is entitled to judgment as a matter of law on each of those claims. A separate and appropriate order will be entered.

DONE this 27th day of January, 1999.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE